**In re ARIUS, INC., Debtor.**

**Bankruptcy No. 95–2287–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Feb. 23, 1999.

Robert Perry, Jacksonville, FL, for Elected Trustee William Brandt.

Kenneth D. Herron, Jr., Orlando, FL, for Interim Trustee George E. Mills, Jr.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on the Third Interim Application of Trustee for Allowance of Interim Compensation and Reimbursement of Expenses. Appearing were Robert Perry, attorney for the Elected Trustee, William Brandt, Jr.; Kenneth Herron, attorney for the Interim Attorney, George Mills, Jr.; and Kenneth Meeker, attorney for the United States Trustee. After reviewing the pleadings and hearing arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Arius, Inc. ("Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on May 8, 1995. George Mills, Jr. ("Mills" or "Interim Trustee") was appointed Interim Chapter 7 Trustee on May 10, 1995. Mills' appointment was at the outset of the case, during the crucial period of time in which extraordinary effort was needed to evaluate the estate and secure the assets. Mills served as Interim Trustee until William Brandt, Jr. ("Brandt" or "Elected Trustee") was elected and subsequently duly qualified as Chapter 7 Trustee on June 6, 1995. Mills' tenure as Interim Trustee terminated by operation of law upon Brandt's election. The estate was administratively insolvent when Brandt assumed responsibility for

the case. Brandt performed his duties with exceptional skill, converting the administratively insolvent case into an administratively solvent case, with a possible distribution to unsecured creditors.

Mills filed an Application for Payment of Interim Trustee's Statutory Fees and Expenses on October 6, 1995, requesting $89,902.92. Brandt objected to Mills' interim fee application on numerous grounds. Mills was awarded interim compensation of $15,000.00 on December 18, 1995, with a further award, if any, to be considered upon conclusion of the case.

Mills agreed to full and final compensation from the bankruptcy estate in the additional amount of $20,000.00, for a total of $35,000.00. The fee was negotiated by Brandt and Mills, and was approved by the Court. The funds were paid to Mills.

Brandt was awarded interim fees of $200,000.00 on September 12, 1996, and $15,000.00 on August 6, 1997. Brandt's Third Interim Fee Application was heard on December 15, 1998, at which time the Court indicated it would award Brandt the full amount available under the trustee fee cap of 11 U.S.C. § 326. The United States Trustee ("U.S.T.") objected to Brandt's entitlement to the entire balance of the fee cap.

Brandt argued that the calculation of the trustee fee cap includes all disbursements during the case, including the disbursements made by the Interim Trustee. The U.S.T. took the position that the disbursements made by the Interim Trustee should not be taken into consideration in calculating the fee cap applicable to Brandt.

The total amount disbursed in the case through December 1998 totals $9,517,158.74. Mills collected $1,778,871.00 during his tenure as Interim Trustee. Brandt collected $7,738,287.74 during his tenure as Elected Trustee. If Mills and Brandt were to be paid as separate estates based upon the amount each trustee collected, Mills could be awarded up to $76,616.13, and Brandt could be entitled to up to $255,398.63, for a potential total trustee fee of $332,014.76.

The proper method for calculating a trustee fee cap involving the service of more than one trustee within a single chapter of the Bankruptcy Code is to include all disbursements during the administration of the estate. The authorized fee cap is $308,764.76, based on disbursements in this case through December 1998 totaling $9,517,158.74. Interim trustee payments have been made totaling $250,000.00, of which $215,000.00 was paid to Brandt, and $35,000.00 was paid to Mills. Brandt is entitled to the unpaid balance of the fee cap of $58,764.76.

## CONCLUSIONS OF LAW

The issue presented in this case is whether disbursements made by an interim trustee may be used to calculate the fee cap available to an elected successor trustee under 11 U.S.C. § 326.

Section 326(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., provides:

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee* to parties in interest, excluding the debtor, but including holders of secured claims. (emphasis added)

11 U.S.C. § 326(a). The Bankruptcy Code also provides, at section 326(c):

If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service

*may not exceed the maximum compensation prescribed for a single trustee* by subsection (a) or (b) of this section, as the case may be. (emphasis added)

11 U.S.C. § 326(c).

■ The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The plain meaning of § 326(c) provides that the total compensation of both the interim and elected trustee "may not exceed the maximum compensation prescribed for a single trustee." 11 U.S.C. § 326(c); *In re Bank of New England Corp.,* 134 B.R. 450, 465 (Bankr.D.Mass.1991), *affd.,* 142 B.R. 584 (D.Mass.1992). As a result, any compensation awarded to the interim trustee will affect the amount awarded to the elected trustee. *Id.*

The application of the plain meaning of § 326(c) is not at odds with the intention of the drafters. The legislative history behind § 326(c) explains that the maximum fee allowable to trustees does not change even if two trustees serve in a single case. *In re Frost,* 214 B.R. 295, 297 (Bankr. S.D.N.Y.1997).[1] If an interim trustee is appointed and an elected trustee replaces him, the combined total of the fees payable to the interim trustee and the permanent trustee may not exceed the amount specified in § 326(a). H.Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977).

■ The language of § 326(a) also is determinative. Section 326(a) states that the base amount for the trustee fee cap includes "all moneys disbursed or turned over in the case by the trustee[.]" 11 U.S.C. § 326(a). The legislative history indicates the amounts of disbursements to be used in trustee fee cap calculations are the amounts of money distributed by the trustee to parties in interest. S.Rep. No. 95–989 to accompany S.2266, 95th Cong., 2d. Sess. (1978) pp. 37–38. The word "trustee" in § 326 refers to the position of trustee. 11 U.S.C. §§ 326(a), (c). The "trustee" includes, and is distinct from, every "person" who "serves" in that position. 11 U.S.C. §§ 326(a), (c).

■ The base amount for calculation of the trustee fee cap shall include all disbursements in the case. *Bank of New England,* 134 B.R. at 465. Section 326(c), establishing the fee cap, does not distinguish between interim trustees and other trustees who are elected by the creditors. *In re Fabric Stylesetters, Inc.,* 8 B.R. 872, 873 (Bankr.S.D.N.Y.1981). The scheme of the Code is to draw no distinction between the two. *Id.*

■ Section 326 does not authorize compensation of trustees. *Gill v. von Wittenburg (In re Financial Corp. of America),* 114 B.R. 221, 224 (9th Cir. BAP 1990). Section 326 simply fixes the maximum compensation of a trustee. *Id.* Section 330 authorizes and fixes the standard of compensation. *Id.* The limits in § 326, together with the limits in § 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified. *Id.* (citing H.Rep. No. 95–595, 95th Cong., 1st Sess. 327 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6823).

■ The bankruptcy judge is accorded wide discretion in employing the fee setting criteria of § 330(a). *Corp. of America,* 114 B.R. at 224. A bankruptcy judge has sole discretionary power to award reasonable fees to the trustee and his attorney, subject to the maximum ceiling. *Id.* (citing *In re Gulf Hills Development Corp.,* 60 B.R. 366, 369 (S.D.Miss. 1985)).

---

1. Although *Frost* began as a Chapter 11 case, it was later converted to a Chapter 7 case, and the court expressly addressed the fees payable under the aggregate cap of § 326 based only on the tenure of the two Chapter 7 trustees. *In re Frost,* 214 B.R. at 296.

 

The purpose of § 326 is to limit the administrative expenses of the estate. Without the statutory limitation, more than one fee cap might be justified in a particular case to reasonably compensate the work of each trustee. Applying a separate trustee fee cap to each trustee in this case, as though each were a separate case, potentially could result in payment of fees in excess of the statutory limit. These fees could total $332,014.76, which exceeds the allowed trustee fee cap of $308,764.76, based on the total disbursements in the case.

The clear intent of Congress was to establish one fee cap for each bankruptcy estate for all trustees serving in that case. This single fee cap is based not upon the amount each trustee brought into the estate, but rather, is based upon the total disbursements in the case. It not only would be unfair, but also inequitable, to rule inconsistently with Congress' clear intent in drafting the fee cap statute.

■ All parties in interest benefited from the services of two qualified trustees. Both Mills and Brandt earned and deserve compensation for their efforts. Mills was appointed in the crucial, beginning stage of the bankruptcy case. Mills did not administer the entire bankruptcy estate, but he did evaluate the estate and marshal the assets while serving as the Interim Trustee. Mills provided Brandt with considerable knowledge about the value of the estate, and with a sufficient basis from which to begin his responsibilities as Elected Trustee. Brandt undertook the task of overseeing an administratively insolvent case, and converted that case to an administratively solvent case, with the potential for distribution to unsecured creditors. The circumstances and complexity of this case could warrant higher fees, but the Court is bound by the limitations in the Bankruptcy Code.

The proper method of calculating a trustee fee cap involving the service of more than one trustee within a single chapter of the Bankruptcy Code is to include all disbursements in the case. Brandt is awarded the balance of the fee cap, totaling $58,764.76.