SPECKER MOTOR SALES CO., d/b/a
Choice Motor, Plaintiff/Appellant,

v.

Saul EISEN, et al.,
Defendants/Appellees.

No. 2:03–CV–79.

United States District Court,
W.D. Michigan,
Southern Division.

June 20, 2003.

Donald W. Bays, Osstyn, Bays, Ferns & Quinnell, LLP, Marquette, MI, for Specker Motor Sales Company.

Michael V. Maggio, U.S. Trustee, Grand Rapids, MI, for Saul Eisen.

## *OPINION*

ENSLEN, District Judge.

This bankruptcy appeal raises a question regarding whether 11 U.S.C. § 726(b) mandates disgorgement of interim payments to professionals to effect *pro rata* distribution of Chapter 11 administrative debts or leaves disgorgement to the court's discretion. The Court will affirm the Order of the Bankruptcy Court.

## I. Background

The facts are not in dispute and are as follows. Plaintiff filed a voluntary Chapter 11 petition on March 18, 1997 with the assistance of counsel, who was paid a retainer of $10,000.00. The Bankruptcy Court approved counsel's employment by Order on April 21, 1997. The Bankruptcy Court approved payment of the retainer and fees and costs of approximately $7,300.00, which have not been paid, on February 4, 2002.

Prior to submission of a reorganization plan, Plaintiff filed a Motion to Sell all Assets that was granted on June 16, 1997. After the sale was closed, the United States Trustee filed a Motion for Conversion to a Proceeding under Chapter 7 that was granted on September 24, 1997. At the conclusion of the Chapter 7 Trustee's administration of the case, the Trustee filed a Final Report indicating the case was administratively insolvent such that administrative expenses incurred during the Chapter 11 phase of the case remained unpaid. In his report, the Trustee requested that Plaintiff's counsel be required to disgorge $9,026.59 of his $10,000.00 retainer to allow for *pro rata* distribution among the other administrative claimants. Without disgorgement, there would be only $1,494.67 left over from the sale proceeds after payment of the Chapter 7 administrative claims for distribution *pro rata* to the Chapter 11 administrative claims. These claims total $194,799.74.

No objection to the Trustee's report was received and the Bankruptcy Court entered an Order approving the proposed distribution and disgorgement on August 5, 2002. Plaintiff filed a Motion for Reconsideration on August 16, 2002 to which all relevant parties objected. Plaintiff then filed a Motion for Determination of Whether the Debtor's Attorney Must Disgorge Funds on December 16, 2002. On February 26, 2003, after a hearing, the Bankruptcy Court ruled disgorgement was mandatory under 11 U.S.C. § 726(b).

## II. Standard of Review and Applicable Federal Rules

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. The issue in this appeal is whether the Bankruptcy Court reached a correct conclusion of law with respect to the mandatory nature of disgorgement under 11 U.S.C. § 726(b). Conclusions of law are subject to *de novo* review. Federal Rule of Bankruptcy Procedure 8013; *City of Baltimore v. State of West Virginia (In re Eagle–Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir.2002). "The bankruptcy court makes initial findings of fact and conclusions of law. The district court then reviews the

bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*." *In re Baker & Getty Fin. Servs. Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997).

## III. Analysis

█ Plaintiff contends the Bankruptcy Court erred in not following the Sixth Circuit Bankruptcy Appellate Panel's decision in *United States v. Schottenstein, Zox & Dunn (In re Unitcast, Inc.)*, 219 B.R. 741 (6th Cir. BAP 1998). Defendants argue the *Unitcast* court reached an illogical conclusion that should not be followed by this Court and that has been rejected by numerous other courts.

█ The Court first notes, the decision in *Unitcast* is not binding on this Court as review by a Bankruptcy Appellate Panel is equivalent to review by a district court. 28 U.S.C. § 158(b)(1); *In re Robinson*, 326 F.3d 767, 770–71 (6th Cir.2003). The Court is not persuaded by the decision in *Unitcast* and finds, after review of the few decisions addressing this issue under circumstances similar to those present in the instant action, mandatory disgorgement is the only reasonable and logical result if 11 U.S.C. § 726(b) is to be given any effect.[1] Section 726(b) provides in full as follows:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

When read in terms of other relevant sections of the Bankruptcy Code ("Code") and in light of the purpose of the Code, § 726(b) requires disgorgement of interim payments so as to allow for *pro rata* distribution to equivalently situated creditors.

### A. Interim Payments are not Final

There is no dispute that the retainer Plaintiff's counsel received was not a final payment and was subject to disgorgement. For example, pursuant to 11 U.S.C. §§ 330 and 331, a bankruptcy court may award compensation and interim payments to attorneys.[2] Such payments are subject to

---

1. The Sixth Circuit Court of Appeals is generally silent on issues relevant to this action. The majority of other district courts and bankruptcy courts favor the Bankruptcy Court's ruling in this matter.

2. Section 330 states in pertinent part:
   After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
   (A) reasonable compensation for actual, necessary services rendered by the trustee,

examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
   (B) reimbursement for actual, necessary expenses.
   Section 331 states in pertinent part:
   A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court ... for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and

disgorgement if deemed excessive or improper. *See e.g.,* 11 U.S.C. § 330 ("The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested."); *In re Big Rivers Elec. Corp.,* 284 B.R. 580, 599 (W.D.Ky.2002); *In re Heatherly,* 179 B.R. 872, 875 (Bankr.W.D.Tenn.1995). Plaintiff's counsel acknowledged this potential and now cannot claim surprise when such an event occurs. Notice of Appeal from Bankruptcy Court, Ex. 13, at 5.

Plaintiff contends imposing such a risk on its counsel renders him a guarantor for the estate. The Court finds this argument lacks merit. Plaintiff's counsel is no more a guarantor of the estate than any other creditor incurring post-petition debt who must await resolution of the bankruptcy proceedings before hoping to collect. Furthermore, delaying payment to counsel helps insure efficient administration of the bankruptcy by diminishing counsel's incentive to incur large fees.

> Whether Congress intended it or not, the fact that attorneys for the debtor-in-possession will not be paid on a regular basis keeps the attorney alert to the ongoing reorganization chances of the debtor. It does the attorney no good to build up a massive Chapter 11 administrative claim, which will then be subordinated in a later Chapter 7 .... Attorneys are less likely to allow a Chapter 11 business to continue when they are amassing fee bills which may go unpaid.

disburse to such applicant such compensation or reimbursement.

**3.** The Court also notes, a retainer is the property of the estate until awarded as compensation. *In re Downs,* 103 F.3d 472, 478 (6th

*In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255, 258–59 (Bankr.N.D.Ohio 1989); *see also In re Bread & Chocolate, Inc.,* 148 B.R. 81, 82–83 (Bankr.D.C.1992) (stating counsel is in the best position for determining debtor's ability to pay Chapter 11 administrative expenses so should bear risk of insolvency with other administrative creditors). Instead of a guarantor, counsel is a gambler in such proceedings like every other administrative creditor.

Finally, Plaintiff offers no legitimate reason not to include interim payments in a § 726(b) *pro rata* distribution. As already stated, interim payments are not final.[3] They are intended only as sustenance, to relieve the economic burden on professionals providing services. *In re Mansfield Tire & Rubber Co.,* 19 B.R. 125, 127 (Bankr.N.D.Ohio 1981). Therefore, they should not be excluded from the amount used to pay debts owed at the end of the case. Were these payments final, §§ 330 and 331 would be given no effect as the court would be denied the opportunity to correct excessive compensation or respond to fraud or other improper behavior. To give full effect to all provisions of the Code, interim payments must be considered part of the estate and used to calculate the amount available to pay debts owed at the end of the case according to the priorities established in the Code. *See In re Metro. Elec. Supply Corp.,* 185 B.R. 505, 508 (Bankr.E.D.Va.1995); *In re Kearing,* 170 B.R. 1, 5–7 (Bankr.D.C.1994). There is no justification for treating attorneys or others eligible for interim payments better than others in the same class of creditors.

Cir.1996). Therefore, the money paid to counsel in this action still belongs to the estate and for all intents and purposes cannot be claimed by counsel.

**B. Plaintiff's Interpretation would Result in Superpriority for Counsel**

■ As Defendant Trustee indicates in his brief, failure to disgorge would allow Plaintiff's counsel to receive 57.9 percent of the amount due him while other creditors would receive only 0.7 percent of the amounts owed to them.[4] With disgorgement, each creditor would receive 5.6 percent of the amounts owed to them. This honors the intent of the Code and the classification of the remaining creditors as equal, none having a superpriority over another. "One overarching object of the Bankruptcy Code is equality of distribution to like situated creditors. An expression of this policy is found at 11 U.S.C. § 726(b) which provides in essence that all claimants, including administrative claimants, whose claims accrued in the same chapter shall be reimbursed pro rata." *In re Interstate Motor Freight Sys., IMFS, Inc.,* 71 B.R. 741, 744 (Bankr.W.D.Mich. 1987); *see also Clarke v. Rogers,* 228 U.S. 534, 548, 33 S.Ct. 587, 57 L.Ed. 953 (1913) (stating "[e]quality between creditors is necessarily the ultimate aim of the bankrupt law"). Failure to disgorge would create a superpriority for counsel able to receive an interim payment for which creditors, otherwise considered equal by the Code under §§ 503(b)(1) and 507(a) and (b), are not eligible.

■ Leaving disgorgement to the discretion of the court allows courts to create priorities Congress did not authorize.

Courts cannot prefer one creditor over another unless specifically directed to do so by the statute. "The theme of the Bankruptcy Act is 'equality of distribution,'and if one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. NLRB,* 344 U.S. 25, 29, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (internal citation omitted); *In re CSC Industries, Inc.,* 232 F.3d 505, 508 (6th Cir.2000). When Congress intended courts to exercise discretion, it indicated as much in the language of the statute. For example, the Court should not ignore the use of the word "may" in §§ 330 and 331 as opposed to use of the word "shall" in § 726(b).[5] Allowance of discretion in certain sections, §§ 330 and 331, does not mandate discretion in another section, § 726. In fact, the Court finds the existence of discretion with respect to awarding compensation is necessary in order to effect the mandatory nature of § 726(b). Disgorgement is a harsh remedy and when employed for purposes of sanction as under §§ 330 and 331, it should be done with discretion.[6] *In re Federated Dep't Stores, Inc.,* 44 F.3d 1310 (6th Cir.1995); *In re Downs,* 103 F.3d 472, 478 (6th Cir.1996). However, when necessary to effect *pro rata* distribution as required by § 726(b), there is no need for discretion. Therefore, the Court should refrain from inserting priorities into the Code not intended by Congress. *United States v. Noland,* 517 U.S. 535, 536, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

---

4. Defendant Trustee arrived at this number by adding the $10,000.00 counsel has already received to his *pro rata* share of the remaining sale proceeds based on the debt still owed him.

5. Section 330 states, "the court *may* award ... reasonable compensation;" section 331 states, "the court *may* allow ... compensation or reimbursement;" and section 726(b) states, "payment ... *shall* be made pro rata."

11 U.S.C. §§ 330, 331, and 726(b) (emphasis added).

6. The need for discretion is inherent in §§ 330 and 331 because they permit the court to grant compensation according to services rendered. Discretion is necessary when determining an appropriate amount of compensation.

## C. Counsel is on Notice and Will not be Dissuaded from Taking Cases

Plaintiff contends no attorney will take such a case if mandatory disgorgement is the rule of law. Plaintiff also pleads if this is the rule of law, it was not apparent upon filing of this petition. The Court disagrees and finds sufficient case law existed on this issue such that counsel should have been aware of this specific risk. *Metro. Elec. Supply*, 185 B.R. at 509. Additionally, the risk of disgorgement for other reasons was certainly known to counsel and so the alleged additional risk being imposed now should not have a substantial effect on counsel's willingness to get involved in such matters. *Id.* Lawyers regularly get involved in legal matters without knowing if they will be compensated. It is the potential payout that makes it worthwhile and which the Court is confident will continue to influence significant numbers to continue in this line of business.

Plaintiff undermines its own argument by seeking a ruling that disgorgement is discretionary, rather than not an option at all. Such an argument acknowledges the risk of disgorgement pursuant to § 726(b), albeit a risk of unknown likelihood. Perhaps mandatory disgorgement changes the odds, but it does not impose a previously non-existent risk and Plaintiff cannot argue as much. Bankruptcy has always presented a risk by establishing priority of payments and allowing for disgorgement of payments. The Court's ruling does not change that risk and stays true to the fundamental principles of the Code.

## IV. Conclusion

For the reasons stated, the Court will deny Plaintiff's Appeal and the Judgment of the Bankruptcy Court will be affirmed.

A Final Judgment consistent with this Opinion will be entered.